UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IZAIAH FEBLES and NICHOLAS
PERILLO, on behalf of themselves
and those similarly situated,

    Plaintiffs,

v.                                                                                       Case No.:  2:24-cv-47-JLB-KCD

AMERICAN HEALTH REFORM
SOLUTIONS, LLC,

    Defendant.
_____/

## AMENDED ORDER[1]

In this Fair Labor Standards Act ("FLSA") case, Defendant American Health Reform Solutions, LLC moves to compel arbitration. (Doc. 14.)[2] Plaintiffs responded in opposition (Doc. 23), and American Health replied (Doc. 29). For the reasons below, the motion to compel arbitration is denied.

### I. Background

Plaintiffs Izaiah Febles and Nicholas Perillo worked for American Health as sales agents. They claim, individually and on behalf of those

---

[1] The Court issues this amended order to correct a scrivener's error in its reference to Defendant on pages 6-9 of the original order.

[2] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

similarly situated, that American Health failed to pay them overtime. (Doc. 1.) To recover those wages, they now sue under the FLSA. (*Id.*)

Whether this case goes to arbitration centers on two documents Plaintiffs signed when they began employment—an Offer Letter (Doc. 23-2), and an Employment Agreement (Doc. 14-1).[3] The Offer Letter came first, and it contains the terms and conditions of Plaintiffs' employment such as compensation and benefits. (Doc. 23-3 at 1.) Of note here, the Offer Letter has no alternative dispute provision. Any disagreements are to be addressed in a Florida court. (*Id.*)

The second document—the Employment Agreement—discusses no terms of employment. Rather, it focuses on what happens when an employee leaves the company. (Doc. 14-1.) The introductory paragraph states that American Health "has a unique business model and the parties hereto recognize that it has a legitimate business interest in preventing unfair competition from *former* employees who were granted access to its methods, marketing strategy and highly trained personnel." (*Id.* at 1 (emphasis added).) The remaining substantive paragraphs, in turn, require former employees to return confidential information upon departure and impose a one-year prohibition on soliciting American Health clients or employees. (*Id.* at 2.)

---

[3] The Court uses the CM/ECF pagination for Docs. 14-1 and 23-3.

2

Unlike its counterpart, the Employment Agreement has an arbitration provision:

> 3. <u>Forum Selection and Choice of Law</u>: This Agreement and the relationship of the parties shall be governed by the laws of the State of Florida applicable to agreements executed and performed within the State of Florida and without giving effect to any statutes or rules related to the conflict of laws. The Parties agree and acknowledge that in the negotiating and executing of this agreement and in the performance of this Agreement, they are purposefully availing themselves of the benefits and laws of the state of Florida as to any dispute arising out of or related to the inception or performance of this Agreement. The parties hereby waive their right to contest the exercise of personal jurisdiction over them in the State of Florida. The parties further agree that exclusive venue shall lie in Broward County, Florida [i]f Company pursues its equitable remedies on account of Employee's violation of the post-employment restrictions in this Agreement but that all other disputes between Company (or its officers, directors or managers) and Employee shall be resolved exclusively through binding Arbitration pursuant to the then-existing Rules of the American Arbitration association for Resolution of Employment Disputes with costs assessed against the non-prevailing party.

(*Id.* at 2.) It also contains a merger clause:

> 6. <u>Complete Agreement; Agreement Confidential</u>. This Agreement contains the entire agreement and understanding between the Company and Employee with respect to Employee's post-employment relationship with the Company and supersedes all prior agreements, whether written or oral, relating to Employee's relationship with the Company. Employee and the Company agree to use their respective best efforts to maintain as confidential the terms of this Agreement.

(*Id.* at 3.)

American Health now moves to compel arbitration under the Employment Agreement, arguing it supersedes the Offer Letter through the merger clause. (Doc. 14 at 5.) Plaintiffs respond that the Offer Letter and Employment Agreement involve different subject matters and can be

3

compartmentalized. Thus, the Offer Letter, which covers compensation, survives. (Doc. 23 at 9-14.) And since the Offer Letter has no arbitration clause, this dispute is properly in court.

## II. Legal Standards

Arbitration is simply a matter of contract. "[I]t is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Because arbitration requires consent, a court presented with a motion to compel arbitration must assess three factors: (1) whether a valid agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived. *See Abellard v. Wells Fargo Bank, N.A.*, No. 19-CV-60099, 2019 WL 2106389, at *2 (S.D. Fla. May 14, 2019).

"The court must grant a motion to compel arbitration if it is satisfied that the parties agreed to arbitrate the claims at issue." *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010). "Whether a party has agreed to arbitrate an issue is a matter of contract interpretation" where state law governs. *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

### III. Discussion

This dispute can be sent to arbitration only if the Employment Agreement controls since the Offer Letter contains no arbitration provision and it specifically covers compensation. *See Lowe v. Nissan of Brandon, Inc.*, 235 So. 3d 1021, 1026 (Fla. Dist. Ct. App. 2018) ("[I]f the parties execute two separate contracts and only one contract contains an arbitration clause, the parties cannot be compelled to arbitrate disputes arising from the contract that does not call for arbitration."). To reach this result, American Health claims that the Employment Agreement's merger clause operates to supersede, or essentially replace, the earlier Offer Letter. (Doc. 14 at 5.) The Court is not convinced.

A merger clause is "[a] contractual provision stating that the contract represents the parties' complete and final agreement and supersedes all informal understandings and oral agreements relating to the subject matter of the contract." *Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 53 n.1 (Fla. Dist. Ct. App. 2005). A final integrated agreement discharges prior agreements that fall within its subject matter or conflict with its terms. *See* Restatement (Second) of Contracts § 213 (1981). The main purpose of a merger clause is thus to prevent a party from introducing parol evidence—evidence of preliminary negotiations or prior contemporaneous agreements between the parties—to vary or contradict the written terms of a final agreement. *Jenkins*, 913 So. 2d

5

at 53; *see also Sugar v. Est. of Stern*, 201 So. 3d 103, 108 n.6 (Fla. Dist. Ct. App. 2015).

A merger clause, however, does not conclusively establish that the parties to the final agreement intended to discharge a separate and distinct written contract. *Audiology Distrib., LLC v. Simmons*, No. 8:12-CV-02427-JDW, 2014 WL 7672536, at *14 (M.D. Fla. May 27, 2014) (collecting cases); *see Multimedia Pat. Tr. v. DirecTV, Inc.*, No. 09-CV-00278-H CAB, 2011 WL 3610098, at *3 (S.D. Cal. Aug. 16, 2011) ("A boilerplate merger clause does not evidence a clear expression of intent to extinguish a separate and distinct written contract."). A merger clause in an integrated contract will not supersede a past agreement that embraces a subject matter different from that discussed in the integrated contract. *See, e.g.*, *Yellowpages Photos, Inc. v. YP, LLC*, 418 F. Supp. 3d 1030, 1043 (M.D. Fla. 2019); *see also Franz Tractor Co. v. J.I. Case Co.*, 566 So. 2d 524, 525 (Fla. Dist. Ct. App. 1990).

So for the Employment Agreement to supersede the Offer Letter, there must be a merger. That is, American Health must show the Offer Letter was a past understanding between the parties and covered the same subject matter addressed in the Employment Agreement. *See Franz Tractor Co.*, 566 So. 2d at 525; *Aly Handbags, Inc. v. Rosenfeld*, 334 So. 2d 124, 126 (Fla. Dist. Ct. App. 1976). This it cannot do, and here's why.

The two agreements cover different subjects. This is clear from the plain language of each document. The Offer Letter sets forth the terms and conditions of Plaintiffs' employment and represents the "full complete and exclusive agreement between you and the Company *with respect to its subject matter*." (Doc. 23-3 at 2 (emphasis added).) It addresses Plaintiffs' compensation and benefits and does not discuss arbitration. (Doc. 23-3 at 2.) The Employment Agreement, on the other hand, focuses on protecting American Health when an employee leaves the company. It states, "[t]his Agreement contains the entire agreement and understanding between the Company and Employee with respect to Employee's *post-employment relationship with the Company*[.]" (Doc. 14-1 at 2 (emphasis added).) And the arbitration provision is cabined by applying only to disputes "arising out of or related to the inception or performance of this Agreement." (Doc. 14-1 at 2.)

In short, the two agreements are independent and separate contracts that can be compartmentalized. One addresses the substantive terms of the employment relationship between Plaintiffs and American Health. The other designates the default forum for resolving disputes arising from the parties' post-employment conduct related to confidentiality and solicitation. The two agreements don't otherwise overlap in any way. Thus, the Court finds that the Employment Agreement does not supersede the Offer Letter.

But even if the Court applies the Employment Agreement as American Health argues (Doc. 29 at 2), the same result follows. This is because the arbitration provision therein is limited to disputes involving post-employment violations of restrictive covenants. "Under general contract principles, the plain meaning of a contract's language governs." *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011). "The court must look at the contract as a whole, the parties, and the purpose of the agreement to best determine the intent of the parties in interpreting the agreement." *Id.* Important for present purposes, a reviewing court may not interpret an arbitration provision to ignore other terms of the agreement. *See Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1217 (11th Cir. 2011) ("[A]n interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable.").

The Employment Agreement states, "[t]his Agreement contains the entire agreement and understanding between the Company and Employee with respect to Employee's post-employment relationship." (Doc. 14-1 at 2.) Then, as to arbitration, it specifies:

> Forum Selection and Choice of Law … The parties further agree that exclusive venue shall lie in Broward County, Florida [i]f Company pursues its equitable remedies on account of Employee's violation of the post-employment restrictions in this Agreement but that all other disputes between Company (or its officers, directors or managers) and Employee shall be resolved exclusively through binding Arbitration[.]

8

(Doc. 14-1 at 2.) The only interpretation that gives meaning to all contractual terms is that the arbitration clause covers disputes arising out of or related to "this Agreement" (*i.e.*, post-employment restrictive covenants). Any other approach would essentially jettison the Employment Agreement's language that cabins its subject matter. This is not something the Court can do. *See, e.g., United States v. Menasche*, 348 U.S. 528, 539 (1955) ("The cardinal principle of statutory construction is to save and not to destroy. It is our duty to give effect, if possible, to every clause and word[.]").

American Health stresses that the arbitration clause is broad, covering "all other disputes between Company and Employee." (Doc. 14-1 at 2.) To be sure, the quoted language is expansive. But the Court cannot read it in isolation and ignore that the Settlement Agreement substantively addresses only post-employment restrictive covenants. At bottom, American Health seeks to stretch the arbitration clause in the Employment Agreement to cover a completely different subject matter addressed in a different contract. That is a bridge too far.

One last issue. As a fallback, Plaintiffs claim American Health waived its right to arbitration by suing Plaintiffs Febles and an opt-in plaintiff in state court to enforce the noncompete provision of the Employment Agreement. (Doc. 23-1.) But as American Health points out, that lawsuit is not relevant to the waiver analysis. "[O]nly prior litigation of the same legal and factual issues as

those the party now wants to arbitrate results in waiver of the right to arbitrate." *Envision Ins. Co. v. Khan*, No. 813CV00114EAKEAJ, 2014 WL 12868890, at *2 (M.D. Fla. Feb. 25, 2014). The factual and legal issues in the suit for Plaintiffs' alleged violation of the noncompete clause do not overlap with the present FLSA claims.

Accordingly, it is **ORDERED**:[4]

1. The Court withdraws its prior order (Doc. 30) and issues this amended order in its place.

2. To avoid any uncertainty given the Court's amended ruling, the deadline for Defendant to file objections is extended to March 29, 2024.

3. Defendant American Health Reform Solutions, LLC's Motion to Compel Arbitration (Doc. 14) is **DENIED**.

4. The Clerk is directed to lift the administrative closure and stay.

5. Defendant's response to the complaint is due by **March 20, 2024**.

**ENTERED** in Fort Myers, Florida on March 15, 2024.

---

[4] Because a motion to compel arbitration does not address the merits of the dispute but merely changes the forum, it is a non-dispositive matter appropriately addressed by order. *See Soriano v. Experian Info. Sols., Inc.*, No. 2:22-CV-197-SPC-KCD, 2022 WL 17551786, at *1 (M.D. Fla. Dec. 9, 2022).

*Kyle C. Dudek*
Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record

11