IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| IZAIAH FEBLES and NICHOLAS PERILLO, on behalf of themselves and those similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>AMERICAN HEALTH REFORM SOLUTIONS, LLC d/b/a AMERICAN HEALTH MARKETPLACE, a Florida Limited Liability Company, GARETH REES, JEFFREY FRANZONI, CHRISTOPHER HERNANDEZ, and PAOLA FRITZ,<br><br>    Defendants. | Case No.: 2:24-cv-47- KCD |

**JOINT MOTION TO APPROVE FLSA
COLLECTIVE ACTION SETTLEMENT**

The Parties move for an order approving their FLSA Settlement Agreement, for dismissal of the action with prejudice, and for the Court to retain jurisdiction for 120 days while the settlement is administered.

### BACKGROUND

On January 15, 2024, Plaintiffs Izaiah Febles and Nicholas Perillo filed this FLSA collective action on behalf of themselves and other similarly situated employees to recover unpaid overtime. Plaintiffs alleged that, although Defendants paid overtime, it violated the FLSA by failing to include certain non-discretionary commissions and

bonuses in its overtime calculations. Plaintiffs sought unpaid overtime wages over a 3-year statute of limitations, liquidated damages and attorney's fees. (Doc. 1).

Defendants denied Plaintiffs' allegations or that they violated the FLSA. Defendants also strongly contested a third year of liability, contending lack of evidence to establish the "willful" standard necessary to impose a 3-year statute of limitations. Finally, Defendants disputed Plaintiffs' claim for liquidated damages and contended that their actions were taken in good faith. (Doc. 68).

On November 15, 2024, the Court granted the parties Stipulation and Motion and for Conditional Certification and Court-Authorized Notice Pursuant to 29 U.S.C. 216(b). (Doc. 69). The Court also ordered mediation at the close of the opt-in period. Notice was sent to approximately 2,600 prospective plaintiffs within the definition of the class. In total, 416 Plaintiffs have consented to opt into this action (including the named Plaintiffs).

Defendants produced time and pay records for every Plaintiff that opted into the action. Counsel independently analyzed the records and prepared and exchanged spreadsheets with their respective damage calculations to facilitate negotiations. In addition to the claims pled in the Complaint, Plaintiffs stipulated to give Defendants notice of any other potential claims before mediation. At the close of the opt-in period and before mediation, Plaintiffs notified Defendants of their intent to amend and add claims for alleged off-the-clock hours, as well as state law class action claims for unpaid overtime wages. Although Plaintiffs did not formally plead off-the-clock claims,

2

Defendants strongly disputed off the clock liability and pointed to its detailed time records and other internal records to show that all time was recorded.

On March 29, 2025, the Parties attended a full day of mediation with Cathleen Scott, Esq. The case did not settle that day, but the mediation was continued until March 31, 2025, when an impasse was declared. The Parties and their counsel continued negotiations and on April 10, 2025, reached agreement on the monetary terms of settlement and continued negotiating the non-monetary terms.

The Parties have now reached a final settlement and have executed a Settlement Agreement, which they present to the Court for approval. **(Exhibit 1).**

## SETTLEMENT TERMS

The Settlement Agreement provides for a total payment to the Plaintiffs in the amount of $358,018.90. The exact amounts that each Plaintiff will be paid are set forth on Exhibit A to the Settlement Agreement.

Using the time and pay records, overtime was calculated by including all nondiscretionary bonus and commission income for each plaintiff. Under the terms of the settlement, each Plaintiff will receive 100% of their respective unpaid overtime wages using a 3-year statute of limitations for their claims pled in the Complaint. The settlement payment to each Plaintiff also includes the payment of liquidated damages in an equal amount to the base claim. If a Plaintiff's total damages were under $100 or the Plaintiff did not have any workweeks that exceeded 40 hours, the Plaintiff will be paid a minimum payment of $100. Thus, each plaintiff will receive their full amount of overtime and liquidated damages based on the time and payroll records.

In addition to and without regard to the amounts to be paid to the Plaintiffs, Defendants have agreed to pay Plaintiffs' attorney's fees in the amount of $205,000 and costs in the amount of $14,278.49.

The Agreement contains a release limited to wage and hour claims. The release excludes potential unpaid commissions on Ameritas dental and vision policies, provided that Plaintiffs alleging they are due unpaid commission payments on sold Ameritas dental or vision insurance policies agree to provide the Company ninety (90) days pre-suit notice to negotiate a resolution in good faith before filing any lawsuit, during which time any statute of limitations will be tolled accordingly.

The settlement payments will be administered by third-party administrator, ILYM Group, Inc. The Agreement describes the settlement payment administration process including the timing for providing the administrator with the Plaintiffs' information, the payment amounts, and funding of the settlement. Each Plaintiff that has opted into this action will receive a settlement check together with a "Notice of Settlement." The Notice will explain how the settlement was calculated and summarize the settlement terms, including the wage release. The Notice will contain a link where each individual Plaintiff can view and download the complete Settlement Agreement. A copy of the proposed Notice is attached as Exhibit B to the Settlement Agreement.

# LEGAL MEMORANDUM

## A.   Legal Standard for Settlement Approval

There are two ways in which claims under the FLSA can be settled and released by employees. First, 216(c) of the FLSA allows employees to settle and waive their claims under the FLSA if the Secretary of Labor supervises the payment of unpaid wages by the employer to the employee. *See* 29 U.S.C. § 216(c); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Second, in the context of a private lawsuit brought by an employee against an employer under section 216(b) of the FLSA, an employee may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement and the district court enters an order approving the settlement. *Id*. In detailing the circumstances justifying court approval of an FLSA settlement in a litigation context, the Eleventh Circuit has stated as follows:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food Stores*, 679 F.2d at 1354.

As this Court has said, "[t]here is no standard test or benchmark to measure a settlement's fairness. Courts instead look to a variety of factors, including (1) the existence of collusion behind the settlement; (2) the complexity, expense, and likely duration of the case; (3) the stage of the proceedings and the discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel." *Watts v. Art of Dermatology, LLC*, 2024 U.S. Dist. LEXIS 110369, *3 (M.D. Fla. June 24, 2024) (citing *Leverso v. Southtrust Bank of AL., Nat. Assoc.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994)). "Courts weigh these factors against a background presumption that the parties reached a fair agreement." *Id.* (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

B.  The Terms of the Settlement Agreement are Fair

First, the Agreement is not the product of fraud or collusion. The Agreement is the result of arm's length negotiations between experienced counsel in the adversarial context of litigation. The settlement follows a year of litigation, the exchange of substantial information, lengthy negotiations, and mediation. *See Freeman v. Trainingwheel Corp., LLC*, 2020 U.S. Dist. LEXIS 240267, *6 (M.D. Fla. June 26, 2020).

Second, the complexity, expense, and likely duration of litigation supports approval. In the absence of a settlement, the litigation will continue for months or even years. In the event the pleadings were amended to add additional "off the clock claims," the complexity and duration would substantially increase given the difficulty proving off the clock claims when the employer has detailed time records. Potentially

6

adding class claims based on state law would similarly add complexity and duration to the case. Adding such claims would provide more uncertainty and would require the current opt-ins to forgo a fair and reasonable settlement of their overtime claims.

Third, the stage of the proceedings and the amount of discovery completed also supports approval. The Parties have advanced the litigation through substantial arbitration disputes, production and analysis of voluminous time and pay records, conditional certification, and mediation. The parties have "had sufficient opportunity to evaluate the strengths and weaknesses of the case." *See Carnegie v. Mut. Sav. Life Ins. Co.*, 2004 U.S. Dist. LEXIS 29404, *72 (N.D. Ala. Nov. 23, 2004). While additional discovery would remain in the absence of the settlement, the key documents necessary to assess liability and damages have been exchanged and analyzed in the adversarial context.

Fourth, the probability of Plaintiffs' success on the merits likewise supports approval. The parties strongly disagree as to the probability of success on the merits. Defendants have continued to deny any wrongdoing or miscalculation of the overtime rate. Likewise, Defendants have denied any willful violation for purposes of the three-year statute of limitations. Defendants also contest liquidated damages. If not settled, Defendants would continue to vigorously contest the merits of Plaintiffs' claims, including any new allegations regarding off-the-clock work and other state law class claims.

Fifth, the range of possible recovery is another factor that favors approval. The Settlement Agreement requires Defendants to pay 100% of the total calculated

damages. In fact, with the minimum payment to 238 of the 416 Plaintiffs, Defendants have agreed to pay more than 100% of the liquidated damages Plaintiffs could have recovered if they continued to pursue the case. If the pleadings were amended to include "off the clock" claims, the recovery could increase, but the burden to prove liability for such claims is heavy. As for potential state law overtime class action claims, those could increase a possible recovery, but, even if successful, would mostly benefit parties not before the Court.

Sixth, the opinions of counsel also support approval. Both Parties are represented by counsel with substantial experience in wage and hour collective actions. Counsel has extensively analyzed time and pay records, interviewed witnesses, researched the legal issues, and prepared detailed damage calculations. Counsel believes that by settling, Plaintiffs avoid the risks of trial and further avoid indefinite delay in payment caused by lengthy litigation, trial and appeals.

In sum, applying each factor above, a settlement requiring Defendants to pay 100% of the liquidated FLSA damages during the 3-year statutory period for the claims pled in the Complaint is a fair and reasonable settlement of Plaintiffs' claims.

### C. Approval of Attorneys' Fees

Finally, Plaintiffs' Counsel requests approval of attorney's fees in the amount of $205,000 and costs in the amount of $14,278.49. This amount was negotiated separately from Plaintiffs' settlement and without regard to the amounts paid to the Plaintiffs. *See Meza v. Axiom Acquisition Ventures Mgmt., LLC*, 2025 U.S. Dist. LEXIS 2834, *4-5 (M.D. Fla. Jan. 7, 2025) (citing *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp.

8

2d 1222, 1228 (M.D. Fla. 2009)("[I]f the parties submit a proposed FLSA settlement that . . . represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff . . . the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.")). Thus, judicial scrutiny of the attorney's fees is not required unless the Court finds the fees are unreasonable on their face. *See Harding* 2022 U.S. Dist. LEXIS 201517, *8; *Freeman*, 2020 U.S. Dist. LEXIS 240267 *3.

Plaintiffs' counsel has litigated this matter for over a year. At the inception, there was a substantial dispute regarding arbitration. After the Court ruled, Plaintiffs' counsel successfully achieved conditional certification. Plaintiffs' counsel analyzed voluminous records, interviewed nearly 100 claimants or witnesses, engaged in substantial negotiations, and negotiated a favorable settlement for Plaintiffs. Thus, the fees and costs[1] requested by Plaintiffs' counsel are reasonable.

**D.   Named Plaintiffs Authority to Settle**

Pursuant to the Notice and Consent to Join Collective Action, the named Plaintiffs, Izaiah Febles and Nicholas Perillo, have the authority to settle this action and execute the Settlement Agreement on behalf of all opt-in plaintiffs. "In FLSA cases, opt-in class members often authorize class counsel or the named plaintiff to settle the case for them, and courts have approved such explicit authorizations." *Hood v. Uber Techs., Inc.*, 2019 U.S. Dist. LEXIS 670, *10 (M.D. N.C. Jan. 3, 2019) (string

---

[1] The costs include filing fees, service of process, mailing and distributing notice to the approximately 2,600 putative class members, and settlement administration.

citations omitted). The Eleventh Circuit has held that Courts should enforce consent forms according to their plain terms. *Prickett v. Dekalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003); *Albritton v. Cagle's Inc.*, 508 F.3d 1012, 1019 (11th Cir. 2007).

Here, the Notice informed the opt-in Plaintiffs that:

> If you join the case, you will be bound by any ruling entered by the court, favorable or unfavorable, or settlement reached by the Parties, approved by the Court as fair and reasonable.

(Doc. 67-1).

Additionally, each opt-in signed a Consent to Join Collective Action ("Consent") that states:

> I understand that this lawsuit is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. I hereby consent, agree, and "opt in" to become a plaintiff herein and to be bound by any judgment by the court or any settlement of this action.

The Consent further states:

> By opting in, I also designate the named Plaintiffs in this action, the collective action representatives, as my agents to make decisions on my behalf concerning the litigation, including the method and manner of conducting this litigation, entering into settlement agreements, entering into an agreement with Plaintiff's Counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

(Doc. 67-2).

Because the named Plaintiffs have the authority to execute the Settlement Agreement on behalf of all Plaintiffs, they are the only individuals who have signed the Settlement Agreement. The Parties ask the Court to approve the named Plaintiffs' execution of the Agreement on behalf of the opt-in Plaintiffs, consistent with the consents and notice previously provided, through which the opt-in Plaintiffs will be

bound by the terms of the settlement, including the limited release of wage and hour claims.

E.  **Request to Retain Jurisdiction During Settlement Administration**

The Agreement states that the Parties will provide the third-party settlement administrator with the Plaintiffs' information and settlement amounts within 10 days of the Court's order approving the settlement. Thereafter, the settlement administrator will issue the settlement checks and "Notice of Settlement" by mail to each Plaintiff. The settlement checks shall remain negotiable for 90 days. The Parties request that the Court retain jurisdiction for 120 days to enforce the terms of the settlement agreement.

WHEREFORE, Plaintiffs and Defendants jointly request that the Court enter an order approving the Parties' Agreement, dismissing the action with prejudice, and retaining jurisdiction for 120 days to enforce the terms of the Agreement.

| | |
|---|---|
| */s/ Jason L. Gunter* | */s/ Robin I. Frank* |
| Jason L. Gunter, Esq. | DANIEL R. LEVINE, ESQ. |
| Fla. Bar No. 0134694 | Florida Bar No. 0057861 |
| Email: jason@gunterfirm.com | E-Mail: DRL@PBL-Law.com |
| Conor P. Foley | ROBIN I. FRANK, ESQ. |
| Fla. Bar No. 111977 | Florida Bar No. 0649619 |
| Email: conor@gunterfirm.com | E-Mail: RIF@PBL-Law.com |
| GUNTERFIRM | PADULA BENNARDO LEVINE LLP |
| 2165 W. First St., #104 | 3837 NW Boca Raton Blvd., Suite 200 |
| Fort Myers, FL 33901 | Boca Raton, FL 33431 |
| Tel. (239) 334-7017 | Telephone: (561) 544-8900 |
| *Counsel for Plaintiffs* | *Counsel for Defendants* |