UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IZAIAH FEBLES, ON BEHALF OF THEMSELVES AND THOSE SIMILARLY SITUATED; AND NICHOLAS PERILLO, ON BEHALF OF THEMSELVES AND THOSE SIMILARLY SITUATED,

      Plaintiffs,

  v.

AMERICAN HEALTH REFORM SOLUTIONS, LLC, GARETH REES, JEFFREY FRANZONI, CHRISTOPHER HERNANDEZ, PAOLA FRITZ,

      Defendants.

Case No. 2:24-cv-47-KCD

## ORDER

Before the Court is the parties' Joint Motion to Approve FLSA Settlement. (Doc. 96.)[1] Because this is a collective action, the parties also ask the Court to retain jurisdiction and approve their proposal for notifying opt-in plaintiffs. For the reasons below, the motion is **GRANTED,** and the settlement agreement is approved.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Background

Plaintiffs Izaiah Febles and Nicholas Perillo worked for Defendants as sales agents. They filed this collective action on behalf of themselves and other similarly situated employees to recover unpaid overtime. Plaintiffs claim that Defendants violated the Fair Labor Standards Act ("FLSA") by failing to include certain non-discretionary commissions and bonuses in the overtime calculations. Plaintiffs seek unpaid overtime wages over a three-year period, liquidated damages, and attorney's fees.

In their answer, Defendants denied violating the FLSA. (Doc. 68.) They also alleged several affirmative defenses, including that Plaintiffs sought damages outside the applicable limitations period. (*Id.*)

After the pleadings closed, the Court approved the proposed collective. (Doc. 69.) Notice was sent to approximately 2,600 employees within the defined collective. In total, 416 plaintiffs consented to join the case. (*See* Doc. 96 at 2.)

Defendants produced time and pay records for every opt-in plaintiff. Counsel independently analyzed the records and prepared and exchanged spreadsheets with their respective damage calculations to facilitate negotiations. Following mediation, the parties reached an agreement and executed a settlement agreement. (*Id.* at 3.)

The settlement provides for a total payment to plaintiffs of $358,018.90. Using the time and pay records, overtime was calculated by including all nondiscretionary bonus and commission income for each plaintiff. Under the terms of the settlement, each plaintiff will receive 100% of their respective unpaid overtime wages using a three-year statute of limitations for their claims pled in the complaint. The settlement payment to each plaintiff also includes damages in an equal amount to the base claim. If a plaintiff's total damages were under $100, or did not have any workweeks that exceeded 40 hours, the plaintiff will be paid a minimum payment of $100. Thus, each plaintiff will receive their full amount of overtime and liquidated damages based on the time and payroll records. (*Id.*)

In addition—and without regard to the sum above—Defendants will pay $205,000 in attorney's fees and $14,278.49 in costs. (*Id.* at 4.) Two more items. First, the settlement agreement contains a release limited to wage and hour claims. Second, the agreement contains a pre-suit notice requirement for any additional claims related to unpaid commissions. (*Id.*)

The settlement payments will be administered by a third party: ILYM Group, Inc. Each opt-in plaintiff will receive a settlement check together with a "Notice of Settlement." The notice will explain how the settlement was calculated and summarize its terms, including the wage release. The notice

will also contain a link where each plaintiff can view and download the complete settlement agreement.

## II. Legal Framework

The FLSA establishes minimum wages and maximum hours "to protect certain groups of the population from substandard wages and excessive hours which endanger[ ] the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). If an FLSA violation is shown, the employer must generally pay the damaged employee unpaid wages, an equal amount as liquidated damages, and attorney's fees and costs. *See* 29 U.S.C. § 216(b).

Following the Eleventh Circuit's decision in *Lynn's Food Stores Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), courts in this district have taken the view that "suits to recover back wages under the FLSA may be settled only with the approval of the district court." *Flood v. First Fam. Ins., Inc.*, 514 F. Supp. 3d 1384, 1386 (M.D. Fla. 2021). The facts in *Lynn's Food* were unique, and it's not clear that the holding was meant to sweep so broadly. *See, e.g.*, *Slaughter v. Sykes Enterprises, Inc.*, No. 17-CV-02038-KLM, 2019 WL 529512, at *3 (D. Colo. Feb. 11, 2019). But no matter how *Lynn's Food* should be viewed, neither party is questioning its applicability here. Thus, the Court will go forward assuming that it must approve the settlement.

Under *Lynn's Food* and its progeny, the parties to an FLSA settlement must present their agreement for a fairness evaluation. If the agreement reflects a fair and reasonable compromise of their dispute, the court may approve it. *See, e.g.*, *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307-08 (11th Cir. 2013). There is no standard test or benchmark to measure a settlement's fairness. Courts instead look to various factors, including (1) the existence of collusion behind the settlement; (2) the complexity, expense, and likely duration of the case; (3) the stage of the proceedings and the discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. *Leverso v. SouthTrust Bank of Ala., Nat. Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994). Courts weigh these factors against a background presumption that the parties reached a fair agreement. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

### III. Analysis

Based on the parties' representations and a review of the docket, the Court finds that the agreement is a fair and reasonable compromise of a disputed claim. Plaintiffs (and the collective as a whole) were represented by experienced counsel who had sufficient time and information to evaluate the potential risks and benefits of settlement. While denying liability, and raising the specter of several meritorious defenses, Defendants have agreed to pay a

5

significant sum to settle. As mentioned, each opt-in plaintiff "will receive their full amount of overtime and liquidated damages based on the time and payroll records." (Doc. 96 at 3.)

There is no stated or apparent collusion. Without a settlement, the parties would need to continue discovery, possibly engage in dispositive motion practice, and proceed to trial, and plaintiffs would risk receiving nothing. The parties and their counsel believe this is a reasonable settlement.

Regarding attorney's fees and costs, given the parties' representation that they agreed on these sums separately from damages, the Court need not undertake a lodestar review. In any event, the fees and costs appear reasonable considering the complexity and time expended in the case. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

The settlement agreement has no general release—opt-in plaintiffs will only release wage and hour claims, which is acceptable. (Doc. 96-1 at 5); *Heath v. Hard Rock Cafe Int'l (STP), Inc.*, No. 6:10-CV-344-ORL-28, 2011 WL 5877506, at *4 (M.D. Fla. Oct. 28, 2011). Further, there are no other terms that courts have flagged as unenforceable, such as a confidentiality provision, *see, e.g.*, *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010), a non-disparagement clause, s*ee, e.g.*, *Loven v. Occoquan Grp. Baldwin Park Corp.*, No. 6:14-CV-328-ORL-41, 2014 WL 4639448, at *3 (M.D. Fla. Sept. 16,

2014), or a no-reemployment provision, *see, e.g.*, *Nichols v. Dollar Tree Stores, Inc.*, No. 1:13-CV-88 WLS, 2013 WL 5933991, at *5 (M.D. Ga. Nov. 1, 2013).

The settlement agreement is signed by the named plaintiffs. Under the circumstances presented, the Court finds that sufficient. "In FLSA cases, opt-in class members often authorize class counsel or the named plaintiff to settle the case for them, and courts have approved such explicit authorizations." *Hood v. Uber Techs., Inc.*, No. 1:16-CV-998, 2019 WL 93546, at *3 (M.D.N.C. Jan. 3, 2019). The notice explained this reservation of rights, and each opt-in plaintiff agreed that the named plaintiffs could "ente[r] into settlement agreements." (Doc. 67-2.)

Finally, the parties request approval of their proposed process for issuing payment. The Court has reviewed the various exhibits and finds them appropriate.

Accordingly, the Court:

1.     **GRANTS** the Joint Motion to Approve FLSA Settlement (Doc. 96), and approves the parties' settlement agreement;

2.     The parties are directed to move forward with issuing payment under the settlement agreement;

3.     The Court retains jurisdiction over this matter for 120 days to enforce the agreement and address any other issues that may arise. At the

7

conclusion of that period, the case will be dismissed and closed without further notice if nothing further has been filed.

**ORDERED** in Fort Myers, Florida on July 11, 2025.

Kyle C. Dudek
United States Magistrate Judge